**STATE of Texas ex rel. Raymond T. YELKIN et al., Appellants,**

**v.**

**Thomas E. HAND, Jr., et al., Appellees.**

**No. 13550.**

Court of Civil Appeals of Texas.

Houston.

Dec. 23, 1959.

Rehearing Denied Jan. 14, 1960.

Further Motion for Rehearing Denied Jan. 20, 1960.

Joseph G. Resweber, County Atty., Barrow, Bland & Rehmet, David Bland, Houston, M. K. Woodward, Graves, Dougherty & Gee, Austin, for appellants.

Jack Binion, Fletcher H. Etheridge, Houston, Butler, Binion, Rice & Cook, Houston, of counsel, for appellees.

WERLEIN, Justice.

This suit was brought under Article 6253, Vernon's Ann.Civ.St., by the County Attorney of Harris County, on relation of Raymond T. Yelkin and certain other persons, hereinafter called appellants, who alleged that they and not the appellees were the properly elected directors of Columbia General Life Insurance Company and should be put in possession of such offices.

and the appellees ousted therefrom. The basis of appellants' contention is that the appellees, Thomas E. Hand, Jr. and J. Ed. Eisemann, III, voted in favor of themselves and the other appellees 57,241 shares of the capital stock of Columbia General Life Insurance Company which was held in an irrevocable trust for the sole use and benefit of said company. Appellants alleged that if such shares had not been voted they would have prevailed in the election of directors by 49,482 votes rather than being defeated by 7,359 votes as contended by appellees.

Appellees duly filed pleas in abatement, designated their "Plea to the Jurisdiction" and their "Motion to Dismiss." From the judgment of the court sustaining in all things such plea and motion, appellants appeal.

The court made no findings of fact or conclusions of law. We shall assume that appellants' points of error recite substantially the grounds upon which the court based its judgment as no contention to the contrary is made by appellees.

By their first three points appellants complain that the Trial Court erred in holding (1) that it was without jurisdiction of this suit since the Commissioner of Insurance of the State of Texas and the State Board of Insurance of Texas had primary jurisdiction of the issues involved, (2) that it was without jurisdiction on the grounds that relators first presented their complaints to the Commissioner of Insurance, who refused to accept jurisdiction, and relators did not thereafter appeal to the State Board of Insurance and thence to the District Court of Travis County, Texas, and (3) that it was without jurisdiction on the ground that this quo warranto proceeding initiated by said County Attorney was an unlawful interference with the prosecution of business of said company.

In determining whether the Trial Court erred, it is necessary to consider both the nature of appellants' suit and the jurisdiction conferred upon the Board.

This suit is essentially an election contest to determine title to office, i. e., whether appellants or appellees were elected as directors of the company in an election on March 10, 1959. In deciding that issue, it must be determined whether appellees, Thomas E. Hand, Jr. and J. Ed. Eisemann, III, were entitled in said election of directors to exercise voting rights upon stock of said company which they had owned, after they had transferred such stock in trust for the sole benefit of the company under a trust agreement dated October 31, 1955, by and between Thomas E. Hand, Jr. and J. Ed. Eisemann, III, as trustors, and Oliver M. Bakke, Jr., as trustee. In the trust agreement it is provided that the power to vote or to direct the voting of said stock shall remain with and be vested in the trustors during the term of the trust.

Chapter 3 of the Insurance Code of Texas, V.A.T.S. governs the method and mechanics of creating life insurance companies such as the Columbia General Life Insurance Company. It also prescribes, among other things, certain procedures with respect to the election of directors and their term of office, the adoption of by-laws, the right of stockholders to inspect the records of the corporation, the filling of vacancies on the board of directors, and the holding of annual stockholders' meetings on the second Tuesday in March. Article 3.04, Sec. 4, provides in part:

"At all meetings of the stockholders, each stockholder shall be entitled to one vote for each share of stock fully paid up appearing in his name on the books of the company, which vote may be given in person or by written proxy. The majority of the paid up capital stock at any meeting of the stockholders shall be a quorum."

We have not found, nor have we been cited to, any provision in the Insurance Code expressly controlling or governing election contests or prescribing any pro-

cedure for determining title to the office of director where such determination depends solely upon the validity of the election.

Article 1.14, Sec. 3, of the Code provides in part: "The Board may inquire into the competence, fitness and reputation of the officers and directors of each carrier." The purpose of such inquiry is to determine whether such officers and directors are worthy of public confidence. Said article provides the procedure to be followed by the Board and for a review by the District Court of Travis County. This article is inapplicable to the case at hand. The relief sought in the present case is the adjudication of stock voting rights and the effect thereof upon the election of directors. No attack is made upon the competence, fitness or reputation of the officers and directors of the company and no assertion is made that they are not worthy of public confidence.

The distinction between election contests and proceedings brought by private individuals to remove officers or directors because of want of competence, fitness, reputation or because of malfeasance in office, was apparently recognized by Justice Norvell in opinions written by him in the cases of Huffines v. Mercury Life & Health Co., 1945, 185 S.W.2d 239, and Hyatt v. Mercury Life & Health Co., 1947, 202 S.W.2d 320, 324, ref., n. r. e., decided by the San Antonio Court of Civil Appeals.

In the Huffines case the Court held that the trial court properly dismissed the suit because the Board of Insurance Commissioners had not exhausted the jurisdiction vested in it by law. The suit was brought by certain stockholders to reinstate Hyatt as president of the company prior to the Board of Insurance acting upon a so-called order which could have the effect of permanently removing Hyatt from office because of malfeasance in office.

In the Hyatt case an injunction suit was brought to prevent usurpers from continuing in office. The court held that such would not lie, stating:

"Any person dissatisfied with the declared result of the election and contending that he and not the declared victor actually received the greatest number of legal votes has a complete and adequate remedy at law by a suit in the nature of quo warranto or a suit for office."

Although at the time of the decision in the Hyatt case, the Insurance Code of Texas had not been adopted, it is significant that the part of Article 3.04, Sec. 4, of the Code (Acts 1955, 54th Leg., Ch. 363) hereinabove more particularly referred to, relied upon by appellees as giving primary jurisdiction to the Commissioner of Insurance and State Board of Insurance rather than the courts in the present case, was contained in Article 3.04 of the Insurance Code (Acts 1951, 52nd Leg., Ch. 491) and also in Article 4718 of the Revised Civil Statutes of Texas, 1925. We are of the opinion, therefore, that the provisions in Article 3.04 as amended did not change the substantive law of this State in election contests as it existed at the time the Hyatt case was decided.

Article 6253, V.A.T.S., provides:

"If any person shall usurp, intrude into or unlawfully hold or execute, or is now intruded into, or now unlawfully holds or executes, any office or franchise, *or any office in any corporation created by the authority of this State* * * * the Attorney General or district or county attorney of the proper county or district, either on his own accord or at the instance of any individual relator, may present a petition to the district court of the proper county, or any judge thereof in vacation, for leave to file an information in the nature of a quo warranto in the name of the State of Texas. If such court or judge is satisfied that there is probable ground for the proceeding, he shall grant such leave and order

the information to be filed and process to issue." (Emphasis supplied.)

■ We do not think that the Legislature intended to repeal Article 6253 or any part thereof by adopting the Insurance Code. True, the Code repeals all laws in conflict therewith. The Code, however, has neither expressly nor impliedly given to the Commissioner of Insurance and the State Board of Insurance jurisdiction in election contests, and hence there is no conflict between its provisions and Article 6253.

In Board of Insurance Commissioners of Texas v. Guardian Life Ins. Co., 142 Tex. 630, 180 S.W.2d 906, 908, our Supreme Court made the following statement:

"The board can exercise only such authority as is conferred upon it by law in clear and unmistakable terms and the same will not be construed as being conferred by implication. Humble Oil & Refining Co. v. Railroad Commission of Texas, [133 Tex. 330] 128 S.W.2d 9; Commercial Standard Ins. Co. v. Board of Insurance Com'rs of Texas, Tex.Civ.App., 34 S.W.2d 343, writ refused."

In McFarlin v. State, Tex.Civ.App., 272 S.W.2d 630, 631, writ ref., n. r. e., involving a somewhat analogous question but not the Insurance Code, the Court held that in a case involving fact issues relating to any administrative problem, the aggrieved party must exhaust the remedies available to him through the Department of Public Education before resorting to the courts for relief. The Court then stated:

"However, we do not think this rule is applicable to the case here under consideration, for several reasons. In our opinion, the question as to whether a school trustee has or has not been legally elected does not pose an administrative problem."

The Court further held that a proceeding in quo warranto is the exclusive legal remedy afforded to the public by which it may protect itself against the usurpation or unlawful occupancy of a public office by an illegal occupant.

In asserting that the Commissioner of Insurance and State Board of Insurance have primary jurisdiction of the issues involved in this case, appellees place considerable stress upon Kavanaugh v. Underwriters Life Ins. Co., Tex.Civ.App., 1950, 231 S.W.2d 753, 756, error ref. We do not consider the Kavanaugh case in point since in such case the relief sought was the removal of officers and directors for mismanagement and an election to fill their places. Such case is similar to the Huffines case, supra. Clearly the Commissioner of Insurance and State Insurance Board had primary jurisdiction in such cases under Article 1.14, Sec. 3 of the Insurance Code.

The instant case was not brought to remove the directors because of mismanagement or wrongdoing, but, as asserted, to remove them because they were not properly elected, and hence not directors at all, since the stock held in trust could not as a matter of law be voted in favor of them or anyone else. The court in the Kavanaugh case, in discussing the holding in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, quotes with approval the following language appearing in 28 Texas Law Review, pp. 400, 402:

"Although the scope of the Abilene opinion was very broad, subsequent cases have limited the primary jurisdiction doctrine to questions of fact and questions requiring the skills of administrative specialists. Questions of 'law' may appropriately be determined in the first instance by courts, because uniformity may be secured through review, by a single Supreme Court, but the unifying influence of that court can reach neither factual determination nor the exercise of specialized judgment." [231 S.W.2d 756.]

In the instant case we have questions of law, i. e., whether or not any legal right existed to vote the 57,241 shares in question, and whether or not appellants or appellees have the legal title to office as directors. Title to public office is a property right. 34 Tex.Jur., p. 239. We think this true also of office in a private corporation. In Vol. 2, Sec. 365, p. 180, of Fletcher, Cyclopedia on Corporations (1954 Rev.Vol.), it is stated:

"Accordingly, when any corporate office is usurped by one who has no title thereto, either because there has been no appointment or election at all, or because the appointment or election is void or voidable, or because his term of office has expired, quo warranto will lie to determine the title to the office, and to oust the incumbent from the exercise thereof. And the proceedings may be instituted either by the person who claims to be entitled to the office, or by a stockholder. Equitable proceedings, such as an injunction, are not the proper ones to try title to office, because of the adequacy of the legal remedy of quo warranto. Quo warranto lies in case of officers of private corporations as well as in case of public officers, although the contrary is held in some jurisdictions."

In Board of Ins. Com'rs v. Title Ins. Ass'n of Texas, 1954, 153 Tex. 574, 272 S.W.2d 95, 99, the Court through Chief Justice Hickman said:

"If the evidence should disclose that there is unquestionably an abstract plant in operation in Travis County and the question is whether or not Austin Title Company, Inc., and not some other party or company, is its owner, the substantial evidence rule will have no application. This for the reason that *the Board as an administrative agency is not clothed with the power to adjudicate the question of title to property*. Magnolia Petroleum Co. v. Railroad Commission, 141 Tex. 96, 170 S.W.2d 189; Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424." (Emphasis supplied.)

There were apparently fact issues involved in that case. In this case, however, there are no disputed fact issues.

The record in the present case shows that a request was made on behalf of the appellants of the Commissioner of Insurance of the State of Texas to enter a formal order removing appellees from the offices of directors, and installing appellants in those offices. The Commissioner did not comply, stating in an affidavit:

"Believing that the right of such persons to vote said shares pursuant to the terms of the aforementioned indenture was a matter for decision by the courts of this state, and a matter over which I had no jurisdiction, I did not enter any type of formal order denying or granting such request. I wrote a letter to Mr. David Bland, dated June 1, 1959, stating that I was making no attempt to decide the matter but would leave it solely for the courts of this state to decide."

From the refusal of the Commissioner to assume jurisdiction, no appeal was taken.

We agree with the Commissioner of Insurance of Texas, that the right to vote said shares of stock pursuant to the trust agreement was a matter of law for the decision of the courts and not a matter over which he had jurisdiction. For like reason, the Board had no jurisdiction. The suit was properly brought in Harris County because five of the appellees are residents of Harris County. Article 1995, Sec. 4, V.A.T.S. Furthermore, the offices in question are in a corporation having its principal office and place of business in said county.

The instant case is distinguishable from State Board of Insurance v. Adams, 316

S.W.2d 773, cited by appellees, in which this Court held that Senate Bill 222, June 12, 1957, Acts 1957, c. 499, Insurance Code, §§ 1.02 to 1.09–3, repealed all prior existing laws inconsistent therewith. In that case the court was called upon to determine whether the Legislature in enacting Senate Bill 222 intended to repeal certain existing inconsistent procedures with respect to appeals in insurance cases. There is nothing in the Adams case that will support appellees' contention that a suit involving an election contest and the legality vel non of voting stock beneficially owned by a corporation, cannot be initiated in court by quo warranto.

We think there is no merit in appellees' contention that the County Attorney was prohibited by Article 3.63 of the Insurance Code from bringing this suit. The provision relied upon by appellees is:

"No action shall be brought or maintained by any person other than the Board of Insurance Commissioners for the enjoining, restraining or interfering with the prosecution of the business of the company."

Substantially the same provision is contained in Article 1.19, Sec. 3 of the Code. The business of the company may be carried on and prosecuted by one board of directors as well as by another equally competent. The suit in question was not brought to interfere with the business of the company in any particular, but merely to determine the legally elected directors to carry on such business.

Appellants in their next point assert that the Court erred in holding the County Attorney has no power or authority to maintain this suit and that such power rests solely in the Attorney General of Texas. Article 4 of Sec. 22 of the Constitution of Texas, Vernon's Ann.St. gives the Attorney General exclusive authority (1) to inquire into the charter rights of private corporations, (2) to take such action as may be proper to prevent any private corporation from exercising any power not authorized by law, and (3) to seek judicial forfeiture of corporate charters.

Article 6253, in addition to covering the matters over which the Attorney General is given by the Constitution exclusive authority, contains provisions covering matters over which the County Attorney and District Attorney are given concurrent jurisdiction with the Attorney General. There is nothing in the Constitution giving the Attorney General exclusive authority to prosecute suits involving elections of directors of a private corporation. Therefore, such suits may be brought by any of the officers mentioned in Article 6253.

Counsel for appellees have very forcibly and ably argued that the present law suit was obviously a suit to prevent an alleged exercise of corporate powers not authorized by law within the meaning of Article 4, Sec. 22 of the Texas Constitution, and falls within the exclusive authority of the Attorney General. They point out that the powers of a corporation can be exercised only through its duly elected directors, and that the exercise of such powers by persons who have not been lawfully elected its directors constitutes an unauthorized exercise by the corporation of its powers. In support of their contention they rely heavily upon State v. International & G. N. R. Co., 1896, 89 Tex. 562, 35 S.W. 1067; State v. Dilbeck, Tex.Civ.App., 297 S.W. 1049, error ref.; and Grant v. Elder, 1917, 64 Colo. 104, 170 P. 198. These cases do not militate against the right of appellants to maintain the present suit which has been brought not for the purpose of preventing the corporation from exercising its corporate powers but to determine by whom such corporate powers shall be exercised.

State v. International & G. N. R. Co., supra, was a suit in the nature of quo warranto brought by the County Attorney of Galveston County charging that said railway company was exceeding its corporate

powers by operating the Galveston, Houston & Henderson Railroad Company. The suit was instituted against the company on the ground that it "exercises power not conferred by law." [89 Tex. 562, 35 S.W. 1068.] Clearly, this cause came within the exclusive jurisdiction of the Attorney General under Article 4, Sec. 22 of the Constitution, and the County Attorney had no authority to maintain the suit.

In the Dilbeck case the suit was brought by the Attorney General of Texas in the nature of quo warranto (1) to question the right of individual defendants to exercise corporate rights and franchises of a corporation which had not performed any corporate function for 45 years, and (2) to cancel the charter of such company. The court held it was unnecessary to determine whether the individual defendants were legally exercising such rights and franchises, because of its holding that the company's charter should be declared forfeited. The Dilbeck case is distinguishable from the present suit. In this case there is no question concerning the validity of the company's charter or of a wrongful exercise by individuals of franchise rights and powers of a corporation whose charter had been abandoned and should be declared forfeited.

The Texas quo warranto statute, unlike the Colorado statute in Grant v. Elder, supra, covers separately and specifically the usurpation, intrusion into or unlawfully holding or executing of (a) "any office or franchise" or (b) "any office in any corporation created by the authority of this State." We think a careful reading of our quo warranto statute in light of Article 4, Sec. 22 of the Constitution conferring specific powers upon the Attorney General, clearly shows that the constitutional provision does not give exclusive authority to the Attorney General to prosecute and maintain a suit merely involving the election of directors in a private corporation. Certainly no attempt in the present suit is made to inquire into the charter rights of the corporation, or to prevent it from exer-

cising any power not authorized by law, or to seek a judicial forfeiture of its charter, which are the only matters over which the Constitution in Article 4, Sec. 22, gives the Attorney General exclusive jurisdiction.

While of no judicial weight, it is interesting to note that the Attorney General, the Honorable Will Wilson, after being requested to file suit in behalf of appellants, wrote a letter to appellants' counsel, stating:

"We may state that we have no objections at all to your taking this matter up with the proper District and County Attorney and we are of the opinion that they (have) concurrent jurisdiction."

We have concluded that under the clear language of the quo warranto statute construed in conjunction with the aforesaid constitutional provision, the County Attorney has jurisdiction to prosecute this suit.

Appellants' fifth point complains that the court erred in sustaining appellees' motion to dismiss on the ground that relators had elected other remedies in (a) applying to the Commissioner of Insurance and (b) in applying to the Attorney General of the State, before instituting the present suit by the County Attorney.

We sustain appellants' fifth point. As appears from what is said hereinabove, the Commissioner of Insurance and State Board of Insurance had no jurisdiction over the subject matter of this suit. We think as a prerequisite to the application of the doctrine of election of remedies, which is a "harsh, and now largely obsolete rule, the scope of which should not be extended," it must appear that the first forum from which relief was sought had jurisdiction. Slay v. Burnett Trust, 1945, 143 Tex. 621, 187 S.W.2d 377, 393. It is stated in 15-B Tex.Jur., pp. 340, 341, "Unless a particular remedy in fact existed, plaintiff's supposition that he had such a remedy and his effort to enforce it is immaterial

and does not constitute an election. * * * Again, the erroneous selection of a tribunal without jurisdiction to hear and determine ·the cause ·and the filing of suit therein is not an election of remedies. And one who by mistake seeks a remedy to which he is not entitled is not estopped from amending his petition and resorting to the proper remedy." Cobb & Gregory v. Parker, Tex.Com.App.1922, 236 S.W. 1108 and McBride v. Briggs, Tex.Civ.App. 1917, 199 S.W. 341.

The fact that an application was first made to the Attorney General who did not choose to proceed and later made to the County Attorney, does not constitute an election of remedies. The remedy in both instances is the same, that of quo warranto, over which they have concurrent jurisdiction. If one of such officers fails or refuses to act, the other is not prevented from acting. Garcia v. Laughlin, 1955, 155 Tex. 261, 285 S.W.2d 191. We do not think that the case of State ex rel. Bennett v. Clarendon Independent School District, 1957, 156 Tex. 542, 298 S.W.2d 111, holds to the contrary.

There is no merit in appellees' contention that the court properly dismissed the suit because the information was not sworn to or verified by affidavit.

█ While the quo warranto statute does not require that an information or petition in a quo warranto proceeding be verified, the Supreme Court of Texas, in Hunnicutt v. State, 1889, 75 Tex. 233, 12 S.W. 106, 108, stated:

"Such relations or information should be sworn to. Although this is not made necessary by the terms of the statute, it has been the practice under similar statutes. If, as seems to be true, the purpose of the affidavit is to give to the judge, whose permission to file the information must be had, reasonable assurance that facts exist which make its filing necessary or proper, than it ought to be held, where such consent is given, that no further inquiry as to the service of his information could be made."

See also Little v. State ex rel. Parsell, 1890, 75 Tex. 616, 12 S.W. 965.

Appellants' petition for leave to file the information was filed June 12, 1959. On the same day the court evidently being satisfied, granted leave, and the petition in quo warranto was filed. Shortly after the receipt of defendants' answer, the attorney for relators filed an affidavit which stated: "That within his knowledge the statement of facts set forth in plaintiffs' original petition are true and correct." If there was any error in the failure of appellants to verify the petition, it was thus later cured. McLeod Independent School Dist. v. Kildare Independent School Dist., Tex.Civ. App., 157 S.W.2d 181, ref. w. m.

Appellants, by their seventh point, complain that the Court erred in sustaining appellees' motion to dismiss on the ground that the Columbia General Life Insurance Company as a legal entity is an indispensable party to this suit.

█ Appellants admit that said company is not a party to the suit and that they refused to amend in order to make it a party. We are of the opinion that though the corporation might have been included in the suit as a proper party, it is not a necessary or indispensable party as no relief of any kind is sought against it. The general rule is stated in 44 Am.Jur., p. 152, as follows:

"Where a corporation having a recognized legal existence has overstepped its powers, it alone is the proper defendant in quo warranto, and a holding company which owns part of its stock and bonds need not be joined. It seems to be the rule, also, that where quo warranto proceedings are instituted to determine the rights of adverse claimants to offices in a corporation, public or private, or other body or association of individuals, but not to challenge the right of the corporation

**798**

or other organization as such to exist or to exercise certain of its functions, the corporation or other body need not be joined as a defendant."

In McFarlin v. State, supra [272 S.W.2d 632], the court stated:

"We find no provision in the statutes of this State or in the Texas Rules of Civil Procedure relating to proceedings in quo warranto which requires or authorizes the joinder of any party other than the alleged wrongdoer, except as contained in Rule 779."

Rule 779, Texas Rules of Civil Procedure, has no bearing upon the instant case since all of the directors alleged to have been illegally elected are parties to the suit.

The case of Morris & Cumings v. State, 65 Tex. 53, relied on by appellees, has no application to the present suit. That case involved a quo warranto proceeding to oust Morris and Cumings from the franchise of collecting tolls under a contract made with the city. The court held that the city was responsible for the conduct of her agents in that respect, and a successful attack upon the grant for the misfeasance or nonfeasance of such agents would be a death blow to the city's rights in the franchise itself. Under such circumstances the city was undoubtedly an indispensable party, as held by the court.

The case of Siranovich v. Butkovich, 366 Pa. 56, 76 A.2d 640, 21 A.L.R.2d 1043, merely holds that a corporation is a proper party in a suit brought by individuals as claimants to the offices of directors in such corporation. The court expressly refrained from determining whether the corporation was a necessary party.

In their next points appellants assert that the court erred in dismissing their suit on the grounds that the trustee and the insurance company as the beneficiary are indispensable parties, and further that the court erred in sustaining appellees' motion to dismiss on the ground that the suit constitutes a collateral attack on the validity of the trust agreement.

It is undisputed that the title to the stock in trust is not in issue. The only issue is whether the voting rights on such stock were improperly and illegally voted. Fletcher, Cyclopedia of Corporations, Vol. 5, p. 184, states:

"Shares of its own stock purchased or otherwise acquired by a corporation, or unissued shares are in suspension until they are reissued or issued. A corporation cannot, in any proper sense, be a stockholder in itself, and shares of its own stock therefore, held by a corporation, cannot be voted * * * Agreeable to the general and ordinary rule, shares owned by the corporation cannot be voted even when they are held in the name of a trustee for it, * * *."

See Hildebrand, Texas Corporations, Vol. 2, p. 469, Sections 547 and 548, where it is stated:

"Section 547. One in whose name stock stands on the books of the corporation as trustee is entitled to vote upon it, unless cestui que trust seasonably asserts his right to have it transferred to him. But if the beneficiary could not own the stock or would be prohibited from voting it, the law cannot be evaded by transferring such stock to a trustee.

"Section 548. A corporation cannot vote, directly or indirectly, its own unissued stock or treasury stock reacquired by it. Nor can persons who hold such stock in trust for the benefit of the corporation vote thereon. The right to vote the stock is suspended while it is so held."

In Italo Petroleum Corporation of America v. Producers' Oil Corporation of America, 20 Del.Ch. 283, 174 A. 276, 278, the court stated:

"The statute prevents the voting either directly or indirectly by a cor-

poration of its own stock belonging to it. What can 'indirectly' mean unless it be some such thing as having stock belonging to the corporation held in some third party's name and having that third party vote it?"

True, that case was decided in light of the Delaware statute. We have concluded, however, that the general principle enunciated is sound and that shares of stock in a corporation owned by it or held for it in trust cannot be voted in electing directors. During the time that the stock is so owned or held in trust the voting rights thereof are suspended.

Since the title to the stock in question is not involved in this suit, nor the validity of the trust agreement, we think that neither the trustee nor the corporation as the beneficiary of the trust are necessary or indispensable parties to this suit. This suit will determine only whether the trustors, who are parties to the suit, have lawfully voted the stock and what the court concludes with reference to the voting rights of such stock will not in any way affect the ownership thereof. See Aranow and Einhorn, Proxy Contests for Corporate Control, p. 471; Thompson on Corporations, Third Edition, Vol. 2, Sec. 959, p. 333.

In view of what has been said, the case must be reversed and remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

### On Motion for Rehearing

In our original opinion, in stating that the title to the stock held in trust was not in issue and that the only issue was whether such stock was illegally voted, we cited Fletcher, Cyclopedia on Corporations, Hildebrand, Texas Corporations, and Italo Petroleum Corporation of America v. Producers' Oil Corporation of America, and then expressed the opinion that the general principle enunciated therein, to the effect that shares of stock in a corporation owned

by it and held in trust for it could not be voted, was sound. Appellees' motion for rehearing has directed our attention to the fact that the Trial Court merely sustained their second amended plea to the jurisdiction and their second amended motion to dismiss, and did not pass upon their special exceptions. We, therefore, withdraw and delete from our opinion the foregoing expression of opinion going to the merits of the case. We are still of the opinion that no issues of fact were in dispute in connection with appellees' said plea and motion.

Appellees' motion for rehearing is overruled.